PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY LAMAR JONES TRUST, | ) | |
| | ) | CASE NO. 4:26CV2201 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FORD MOTOR CREDIT | ) | |
| COMPANY LLC, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 8] |

*Pro Se* Plaintiff Anthony Lamar Jones ("Jones") filed this action individually and as the fiduciary of the Anthony Lamar Jones Trust ("the Trust") against Ford Motor Credit Company LLC ("FMCC") and Trumbull County, Ohio Title Department employees Alyson Jumper ("Jumper") and Christine Ortiz ("Ortiz"). *See* Amended Complaint (ECF No. 1). Jones, acting as an individual, purchased a vehicle from Klaben Ford in Warren, Ohio and financed this purchase through FMCC. Four months later, he attempted to pay-off the balance of the loan by using a fictitious document of his own creation which resembled a check, but which was drawn on a non-existent Master Account at the Federal Reserve Bank. FMCC treated the document as it would any check, but soon discovered that it could not be processed. FMCC then contacted Jones and corrected the loan account to reflect that the purported check had not cleared. Jones appears to contend that once FMCC took possession of the purported check, FMCC was obligated to accept it as payment even if it was not drawn on a valid account and did not result in

a transfer of funds. Jones also attempted to obtain a new title, but his request was rejected by the Trumbull County Title Department. Jones filed this action asserting claims of breach of contract, conversion, and violation of Ohio Revised Code § 1345.01 against FMCC, and claims for denial of due process against Jumper and Ortiz. He seeks declaratory relief and unspecified monetary damages.

On October 13, 2026, Jones filed a First Amended Complaint (ECF No. 7) individually against only FMCC as of right pursuant to Fed. R. Civ. P. 15(a)(1)(B).

## I. Background

Jones purchased a 2026 Ford Explorer from Klaben Ford on February 5, 2026. He does not indicate the purchase price of the vehicle. Jones contends he tendered $15,000 in cash in the form or a cashier's check drawn on his account at Chase Bank. He received a trade-in credit of $6,000 and financed the remainder of the purchase price through FMCC. *See* Affidavit of Anthony Lamar Jones (ECF No. 1-1) at PageID #: 11, ¶ 3. Plaintiff provides a photocopy of a photograph of a screen shot (ECF No. 1-15) that suggests he made a payment in March 2026 in the amount of $5,267.20, but made no payments on the loan in April or May 2026.

In June 2026, Jones decided to attempt to pay off the loan without using any money from the Trust assets or from his personal funds. He created a document that appeared to be a check in the amount of $28,347. *See* ECF No. 1-2. The "check," however, was fictitious. Jones listed the Trust in the part of the check that generally would contain the name, address and telephone number of the account holder. The document did not include a routing number or account number across the bottom of the document. He referenced an "FRB Master Account" number

under the date of the check. Jones personally signed the document even though the document was entirely fraudulent. He has no "master account" at the Federal Reserve Bank of St. Louis. Master Accounts at the Federal Reserve are available only to an eligible financial institution (such as a bank or credit union), not individuals. *See* Master Account and Services Database, https://www.federalreserve.gov/paymentsystems/master-account-and-services-database-about.htm (last visited Oct. 21, 2026).

Initially, it appeared that this scheme had been successful, and FMCC showed a credit on Jones's loan account for $ 28,347. *See* Photocopy of a Photograph of a Screen Shot (ECF No. 1-8); FMCC Letter (ECF No. 1-9). When the document did not clear as a check because it was not drawn on an existing bank account belonging to either Jones or the Trust, FMCC voided the transaction and corrected its records to reflect the full remaining loan balance. *See* ECF No. 1-15. Jones alleges that because FMCC took possession of the document he created and attempted to process it as a payment, they later could not refuse to credit the loan account, even when it became apparent that the account from which it was purported to be drawn did not exist and no funds were transferred to FMCC. *See* ECF No. 7.

During the brief period when FMCC had been deceived into believing the account had been paid, they generated a letter stating that title was now clear. *See* ECF No. 1-10. Jones then went to the Trumbull County Title Department and attempted to obtain a clean title for the vehicle. Again, it appeared initially that he was going to be successful in this attempt; however, moments after a new title was printed, Jumper informed him that the title was not valid and instructed him to surrender it for a restricted memorandum title showing the lien. She told Jones

the paper title had been issued in error because FMCC still had an active lien on the title. He refused to return it. *See* ECF Nos. 1-18 through 1-20. Jumper later telephoned Jones and told him that the title had been voided. The following week, Ortiz contacted Plaintiff and demanded that he surrender the title in his possession, and stated it was invalidated in the database. She offered to return the $20 transfer fee. *See* ECF No. 1-1 at PageID #: 12, ¶¶ 7-12; *see also* Jumper and Ortiz's Answer to Amended Complaint (ECF No. 6). It is unclear whether Jones has since returned the now voided title.

Jones initially brought the above-entitled action against FMCC on behalf of himself and the Trust, claiming that FMCC breached their contract, and converted the vehicle title back to one encumbered by the lien. He also claimed that Jumper and Ortiz denied him due process by voiding the title and replacing it with one that reflects the lien by FMCC. Jones contended he was not given the opportunity to be heard prior to the demand for the return of the title. *See* ECF No. 1. Thereafter, he filed a First Amended Complaint (ECF No. 7) individually against only FMCC. Therefore, the Trust is no longer a party plaintiff, and Jumper and Ortiz are no longer parties defendant. *See* Fed. R. Civ. P. 15 and 21.

## II. Standard for Dismissal

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). And the Court holds a *pro se* complaint to a less stringent standard than one drafted by an attorney. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005) (citing *Haines*, 404 U.S. at 520). Pursuant to *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999) (per curiam), a district court is permitted to conduct a limited

screening procedure and to dismiss, *sua sponte*, a fee-paid complaint filed by a non-prisoner if it appears that the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.* at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). Dismissal on a *sua sponte* basis is also authorized when the asserted claims lack an arguable basis in law, or if the district court lacks subject-matter jurisdiction over the matter. *Id.* at 480; *see also* *Neitzke v. Williams*, 490 U.S. 319 (1989); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990).

**III. Law and Analysis**

This case is frivolous and completely devoid of merit. The Supreme Court of the United States has defined a "frivolous" case as one in which a Plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327. Jones created a document that purported to draw funds from a Master Account at the Federal Reserve Bank of St. Louis. A Master Account is simply a bank account for banks that "gives depository institutions access to the Federal Reserve System's services, including its electronic payments system." *See* *Fourth Corner Credit Union v. Fed. Rsrv. Bank of Kan. City*, 861 F.3d 1052, 1053 (10th Cir. 2017). Master Accounts are only available to depository banks and credit unions. They are not available to individuals or to private trusts. Neither Jones nor the Trust had a Master Account at the Federal Reserve Bank of St. Louis. Jones created a document that he knew was not a real check drawn on an actual bank account which he was authorized to use and into which he had deposited adequate funds to cover the payment. While his actions initially may have misled FMCC, it is clear that FMCC did not receive any funds to pay off the loan, and neither Jones nor

the Trust had money deducted from an actual bank account to pay off the loan balance. No money changed hands in this failed pay-off transaction. At best this was a misguided plan that in no way was a proper means of paying off the loan balance.[1] Viewed less generously, it was an attempt to commit fraud. Because all of the claims asserted in the First Amended Complaint (ECF No. 7) are based on the faulty premise that Jones or the Trust are entitled to enforce acceptance of a fictitious document as payment, they are frivolous. Simply put, Jones is seeking to enforce a legal interest which clearly does not exist. *Neitzke*, 490 U.S. at 327.

## IV. Conclusion

For all of the reasons stated above, this action is dismissed. *See Apple*, 183 F.3d at 479. Plaintiff's Motion for Default Judgment and Rule 54(b) Certification for Partial Final Judgment

---

[1] In fact, the Federal Reserve has issued the following statement on its website warning of an internet scam:

> A recent hoax circulating on the internet asserts that the Federal Reserve maintains accounts for individuals that are tied to the individual's Social Security number, and that individuals can access these accounts to pay bills and obtain money. These claims are **false**. The Federal Reserve does not maintain accounts for individuals, and individuals should not attempt to make payments using Federal Reserve Bank routing numbers or false routing numbers. Individuals who attempt to pay bills or conduct other transactions using a Federal Reserve Bank routing number may face penalty fees from the company they were attempting to pay, or the suspension or closure of their commercial bank or payment service provider accounts. Law enforcement, including the Federal Bureau of Investigation (FBI), is aware of this scheme, and individuals who participate in such schemes could also face criminal charges.

Does the Federal Reserve maintain accounts for individuals? Can individuals use such accounts to pay bills and get money?, https://www.federalreserve.gov/faqs/does-the-federal-reserve-maintain-accounts-for-individuals-can-individuals-use-such-accounts-to-pay-bills-and-get-money.htm (last visited Oct. 21, 2026) (emphasis in original).

Against FMCC (ECF No. 8) is denied as moot. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

October 22, 2026
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge